**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MIMIRIP LLC,<br>Plaintiff,<br>v.<br>MEDIATEK INC.,<br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff MimirIP LLC ("Mimir") brings this action against MediaTek Inc. ("MediaTek") and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement (hereinafter the "Action"), brought under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, seeking damages and other relief arising out of MediaTek's infringement of United States Patent Nos. 7,468,317 ("the '317 Patent"), 7,755,954 ("the '954 Patent"), 7,978,547 ("the '547 Patent"), and 8,274,102 ("the '102 Patent") (together, the "Asserted Patents").

2. Mimir owns the entire right, title, and interest in and to each of the Asserted Patents. The Asserted Patents were the product of the research and development activities of SK hynix Inc. ("SK hynix"), a leading global developer and supplier of dynamic random-access memory ("DRAM") and NAND chips, and Mimir is the owner of the Asserted Patents by assignment.

3. Mimir asserts that MediaTek infringes each Asserted Patent by, without Mimir's authorization, making, using, offering to sell, and/or selling within, and/or importing into, the United States, certain systems on a chip ("SoCs") comprising multi-core graphic processing units ("GPUs") and/or central processing units ("CPUs"), as well as memory controllers.

## THE PARTIES

4. Plaintiff MimirIP LLC is a Texas limited liability company with its principal place of business at 9330 Lyndon B. Johnson Freeway, Suite 900, Dallas, TX 75243.

5. Defendant MediaTek Inc. is a corporation organized and existing under the laws of Taiwan and is located at No. 1, Dusing 1st Rd., Hsinchu Science Park, Hsinchu, 30078, Taiwan.

6. On information and belief, MediaTek and its affiliates are part of the same corporate structure and distribution chain for making, importing, offering to sell, selling, and using the accused devices in the United States, including in the State of Texas generally and this Judicial District specifically. MediaTek is a multinational company headquartered in Taiwan, with sales and R&D teams around the world.

7. MediaTek and its affiliates share management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

8. MediaTek and its affiliates regularly contract with customers in the United States regarding products made for or on behalf of those customers.

9. MediaTek and its affiliates thus operate as a unitary business venture.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Mimir's claims of infringement of the Asserted Patents pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (action arising under an Act of Congress relating to patents). The claims in this Action arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

11. The Court has personal jurisdiction over MediaTek consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute, TEX. CIV. PRAC. & REM. CODE § 17.042(2). On information and belief, MediaTek has

regularly and systematically transacted business in Texas, including in this Judicial District, directly or indirectly through subsidiaries or intermediaries and committed acts of patent infringement in Texas, including in this Judicial District, as alleged in detail below. MediaTek has also placed infringing products into the stream of commerce by shipping the infringing products into Texas or elsewhere knowing that those products would be shipped into Texas. MediaTek makes, uses, sells, offers for sale, imports, advertises, makes available, distributes, and/or markets products within Texas, and specifically within this Judicial District, that infringe one or more claims of the Asserted Patents, as alleged more particularly below.

12. MediaTek has infringed or caused infringement in Texas, including in this Judicial District, by, among other things, promoting, offering for sale, distributing, and/or selling infringing products. MediaTek has authorized sellers and sales representatives that offer for sale and sell infringing products to consumers at various locations throughout Texas and this Judicial District, including but not limited to: Best Buy, BestBuy.com, Walmart, Walmart.com, and Amazon.com (which delivers infringing products throughout this Judicial District). On information and belief, MediaTek intends for customers to use its products within this Judicial District. Therefore, the exercise of personal jurisdiction over MediaTek is appropriate under the applicable jurisdictional statutes and would not offend traditional notions of fair play and substantial justice.

13. Venue in this District is proper under 28 U.S.C. § 1391(c)(3) because MediaTek is a foreign corporation subject to personal jurisdiction in this District and has committed acts of infringement within this District giving rise to this action.

14. MediaTek has admitted or not contested personal jurisdiction and venue in this District in other recent patent infringement actions. *See, e.g.*, *K.Mizra LLC v. MediaTek Inc.*, No. 2:26-cv-253 (E.D. Tex. filed Mar. 25, 2026); *Freedom Patents LLC v. MediaTek, Inc.*, No. 4:25-

cv-425 (E.D. Tex. filed Apr. 24, 2025); *Deepwell IP LLC v. MediaTek Inc.*, No. 2:23-cv-429 (E.D. Tex. filed Sep. 19, 2023); *MOSAID Techs. Inc. v. MediaTek, Inc. et al.*, No. 2:23-cv-129 (E.D. Tex. filed Mar. 28, 2023).

## FACTUAL ALLEGATIONS

### A. Background

15. This lawsuit involves significant advancements in certain semiconductor devices and methods of manufacturing such devices. The Asserted Patents were the product of research and development activities of SK hynix, a leading global developer and supplier of DRAM and NAND chips, and Mimir is the owner of the Asserted Patents by assignment.

16. The Asserted Patents are directed to novel and non-obvious devices and methods of manufacture that provide technical, manufacturing, and economic advantages.

### B. The Asserted Patents

17. The ’317 Patent is entitled “Method of Forming Metal Line of Semiconductor Device” and issued on December 23, 2008. The named inventors on the ’317 Patent are Jik Ho Cho and Tae Kyung Kim. Mimir owns the entire right, title, and interest in and to the ’317 Patent. A true and correct copy of the ’317 Patent is attached hereto as Exhibit 1.

18. The ’954 Patent is entitled “Data I/O Control Signal Generating Circuit In A Semiconductor Memory Apparatus” and issued on July 13, 2010. The named inventor on the ’954 Patent is Chang-Il Kim. Mimir owns the entire right, title, and interest in and to the ’954 Patent. A true and correct copy of the ’954 Patent is attached hereto as Exhibit 2.

19. The ’547 Patent is entitled “Data I/O Control Signal Generating Circuit In A Semiconductor Memory Apparatus” and issued on July 12, 2011. The named inventor on the ’547 Patent is Chang-Il Kim. Mimir owns the entire right, title, and interest in and to the ’547 Patent. A true and correct copy of the ’547 Patent is attached hereto as Exhibit 3.

20. The ’102 Patent is entitled “Semiconductor Device” and issued on September 25, 2012. The named inventor on the ’102 Patent is Yun Taek Hwang. Mimir owns the entire right, title, and interest in and to the ’102 Patent. A true and correct copy of the ’102 Patent is attached hereto as Exhibit 4.

21. Mimir, as the owner of all right, title, and interest in and to the Asserted Patents, possesses all rights to sue and recover past and future damages for infringement of the Asserted Patents.

**C. The Accused Products and Infringing Activities**

22. MediaTek, without Mimir’s authority, makes, uses, offers to sell, and sells within, and imports into, the United States, and/or instructs others regarding the making, use, sale, or importation of certain chips and electronic devices containing the same, such as smartphones, tablets, computers, televisions, and other end-user devices, that directly infringe (literally or under the doctrine of equivalents), induce and/or contribute to the infringement of, and/or are made or produced under, or by means of, a process covered by, one or more claims of each of the Asserted Patents.

23. MediaTek offers several infringing devices including, but not limited to, those identified below (the “Accused Products”).

24. MediaTek’s infringing activities violate one or more subsections of 35 U.S.C. § 271, including but not limited to §§ 271(a), (b), (c), and (g).

25. As noted below, each element of at least one claim of each of the Asserted Patents is literally present in the Accused Products and/or the methods used to manufacture those products. Any element that is not literally present is present under the doctrine of equivalents because it performs substantially the same function in substantially the same way to achieve substantially the same result, and any differences between the accused product and claim element are insubstantial.

**D. MediaTek's Knowledge of the Asserted Patents**

26. MediaTek, on information and belief, has monitored Mimir's patent portfolio and/or SK hynix's patent portfolio and has acted and is continuing to act despite an objectively high likelihood that its actions constitute direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since before the filing of this Action. On information and belief, MediaTek has monitored SK hynix's patent portfolio because MediaTek and SK hynix are two of the largest global competitors in the semiconductor device industry. Accordingly, MediaTek knew or should have known of the Asserted Patents by no later than the dates on which each Asserted Patent issued.

27. Mimir is entitled to pre-suit damages under 35 U.S.C. § 287.

28. At a minimum, MediaTek had knowledge of the Asserted Patents and its infringement of the Asserted Patents on the date on which this Complaint was filed.

**E. Claims for Patent Infringement**

29. The allegations provided below are exemplary and without prejudice to infringement contentions provided pursuant to the Court's scheduling order and local rules. In providing these allegations, Mimir does not convey or imply any particular claim constructions or the precise scope of the claims. Mimir will provide its claim construction contentions regarding the meaning and scope of the claim terms under the Court's scheduling order and local rules.

30. The below infringement allegations are based on currently available information and a reasonable investigation of the structure and operation of the Accused Products. Mimir reserves the right to modify this description, including, for example, on the basis of information that it obtains during discovery about the Accused Products.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,468,317

31. Mimir repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

32. MediaTek has, without Mimir's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain chips and electronic devices containing the same, such as smartphones, tablets, computers, televisions, and other end-user devices, that directly infringe (literally or under the doctrine of equivalents), induce the infringement of, and/or are made or produced under, or by means of, a process covered by one or more claims of the '317 Patent.

33. MediaTek offers several infringing 3nm, 4nm, 5nm, 6nm, and 7nm devices, including but not limited to the Dimensity 800 Series, Dimensity 900 Series, Dimensity 1000 Series, Dimensity 6000 Series, Dimensity 7000 Series, Dimensity 8000 Series, Dimensity 9000 Series, Helio G Series, and Kompanio Series products ("the Accused SoCs").

34. MediaTek's infringing activities violate 35 U.S.C. § 271.

35. The claims of the '317 Patent are valid and enforceable.

36. Claim 1 of the '317 Patent recites:

> A method of forming a metal line of a semiconductor device, the method comprising the steps of:
>
> > sequentially forming a first insulating layer and a second insulating layer with different etch selectivities on a semiconductor substrate;
> >
> > sequentially etching predetermined regions of the first insulating layer and the second insulating layer to form a contact hole;
> >
> > forming a metal barrier layer on the entire surface including a contact hole;
> >
> > depositing a first metal material on the entire surface so that the contact hole is gap-filled;

> stripping the first metal material on the second insulating layer so that the first metal material remains only within the contact hole, thus forming a contact plug; and
>
> forming a metal line on a predetermined region of the second insulating layer including the contact plug.

37. MediaTek's above-discussed activities have infringed and continue to infringe one or more claims of the '317 Patent, including, for example and without limitation, claim 1, because MediaTek's method of manufacturing the Accused SoCs satisfies each and every limitation of this claim and MediaTek has imported into the United States, offered to sell, sold, or used within the United States, and/or induced others to import into, offer to sell, sell, or use within the United States, Accused SoCs or products containing the same.

38. For example, the images below are of a MediaTek Dimensity 6300 6nm device removed from a Motorola G Play 2026 cell phone that was imported into and sold in the United States:




39. On information and belief, the Dimensity 6300 is a semiconductor device manufactured according to a method comprising the steps of claim 1 above.

40. The method of manufacturing the Dimensity 6300 includes a method of forming a metal line of a semiconductor device. This method comprises sequentially forming a first

insulating layer (identified with the red arrow below) and a second insulating layer (identified with the green bracket below) with different etch selectivities on a semiconductor substrate:






41. The method of manufacturing the Dimensity 6300 includes sequentially etching predetermined regions of the first insulating layer and the second insulating layer to form a contact hole, identified in blue below:



42. The method of manufacturing the Dimensity 6300 includes forming a metal barrier layer on the entire surface including the contact hole, as illustrated below.




43. The method of manufacturing the Dimensity 6300 includes depositing a first metal material on the entire surface so that the contact hole is gap-filled, as illustrated below.



44. The method of manufacturing the Dimensity 6300 includes stripping the first metal material on the second insulating layer so that the first metal material remains only within the contact hole, thus forming a contact plug, as illustrated below with the orange annotation.




45. The method of manufacturing the Dimensity 6300 includes forming a metal line on a predetermined region of the second insulating layer including the contact plug, as illustrated below.



46. As discussed above, Mimir reserves its rights to provide greater detail regarding its infringement claims, including their full scope, during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

47. As illustrated above, on information and belief, the Accused SoCs are manufactured using a method that satisfies each and every limitation of at least claim 1 of the '317 Patent. Consequently, MediaTek directly infringes the '317 Patent through at least the importation of Accused SoCs and/or products incorporating the same that are manufactured abroad and by offering to sell, selling, or using the same within the United States. Accused SoCs imported into the United States are neither materially changed by subsequent processes nor trivial and nonessential components of the products into which they are incorporated.

48. MediaTek has induced infringement of the '317 Patent by knowingly and intentionally inducing others to directly infringe the '317 Patent. Despite having notice of the '317 Patent at least by the date on which this Complaint was filed, MediaTek has actively encouraged others to infringe the patent. For example, MediaTek has knowingly and intentionally induced third-party manufacturers, shippers, distributors, and/or retailers to directly infringe (literally or under the doctrine of equivalents) the '317 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Accused SoCs or products containing the Accused SoCs. The Accused SoCs are especially designed to contain features that infringe the '317 Patent.

49. MediaTek takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused SoCs or products containing the Accused SoCs that infringe at least claim 1 of the '317 Patent. Such steps by MediaTek include, among other things, making or selling the Accused SoCs

for importation into or sale in the United States, knowing such importation or sale would occur. MediaTek has engaged in these activities with knowledge of the ’317 Patent and knowledge that the induced acts constitute infringement. MediaTek’s inducement of infringement of the ’317 Patent is ongoing.

50. By at least the date on which this Complaint was filed, Mimir disclosed the existence of the ’317 Patent to MediaTek and identified MediaTek’s infringing activities. Thus, MediaTek has had knowledge of the ’317 Patent and that its activities infringe the ’317 Patent since at least the date on which this Complaint was filed.

51. Accordingly, on information and belief, MediaTek’s acts of infringement of the ’317 Patent have been committed and are being committed with knowledge of Mimir’s patent rights and full knowledge of infringement. MediaTek’s wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Mimir to enhanced damages.

52. Mimir has suffered and continues to suffer damages as a result of MediaTek’s infringement of the ’317 Patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,755,954

53. Mimir repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54. MediaTek has, without Mimir’s authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain chips and electronic devices containing the same, such as smartphones, tablets, computers, televisions, and other end-user devices, that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the ’954 Patent.

55. For example, MediaTek makes, has made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, but not limited to, its MT65xx Series, Helio X Series, Helio P Series, Helio A Series, Helio G Series, MT67xx Mid-Range Series, MT81xx Tablet Series, Kompanio Series, and other products that comply with or otherwise support memory compliant with the JEDEC DDR3 standards ("MediaTek's DDR3 Products").

56. MediaTek's infringing activities violate 35 U.S.C. § 271.

57. The claims of the '954 Patent are valid and enforceable.

58. Claim 1 of the '954 Patent recites:

> A circuit for generating a data I/O control signal used in a semiconductor memory apparatus, comprising:
>
> > a delay block for generating a delay signal having a relatively short delay value and a delay signal having a relatively long delay value; and
> >
> > a selection block for selecting any one of the delay signals according to a speed type of an operation mode,
> >
> > wherein the selection block is configured to select the delay signal having a relatively short delay value in a high-speed operation mode, and is configured to select the delay signal having a relatively long delay value in a low-speed operation mode,
> >
> > wherein the high-speed operation mode signal is a signal which is enabled in a high level when a CAS latency signal is more than a predetermined value, and
> >
> > wherein the low-speed operation mode signal is a signal which is enabled in a high level when the CAS latency signal is less than the predetermined value.

59. MediaTek's above-discussed activities have infringed and continue to infringe one or more claims of the '954 Patent, including, for example and without limitation, claim 1, because the DDR3 Products satisfy each and every limitation of this claim.

60. For example, MediaTek's DDR3 Products include a DDR3-compatible memory controller and physical layer ("PHY") timing circuitry that constitutes a circuit for generating a data I/O control signal used in a semiconductor memory apparatus. The DDR3 standard defines DQS and DQS# as "Data Strobe" signals that are "output with read data, input with write data." DDR3 SDRAM Standard (JESD79-3F) §2.10 at 13-14. The MediaTek controller/PHY generates DQS write-timing control signals used in the DDR3 memory system.

61. MediaTek's DDR3 Products comprise a delay block for generating a delay signal having a relatively short delay value and a delay signal having a relatively long delay value. To comply with or otherwise support memory compliant with the DDR3 standard, the memory controller/PHY has a controller-side programmable or adjustable DQS delay circuitry configured to generate DQS write-timing control signals at different write-timing delay values. The DDR3 standard requires that "[t]he memory controller involved in the leveling must have adjustable delay setting on DQS - DQS# to align the rising edge of DQS - DQS# with that of the clock at the DRAM pin." JESD79-3F §4.8 at 42. This programmable DQS delay circuitry provides relatively short DQS write-timing delay values corresponding to a high CAS Write Latency (CWL) (high-speed) timing mode and relatively long DQS write-timing delay values corresponding to a low-CWL (low-speed) timing mode.

62. MediaTek's DDR3 Products comprise a selection block for selecting any one of the delay signals according to a speed type of an operation mode. The DDR3 standard defines multiple CWL timing modes through Mode Register MR2, which stores CAS Write Latency values encoded by bits A3-A5. *See* JESD79-3F §3.4.4 at 30-31 (Fig. 11). CWL controls Write Latency (WL) together with Additive Latency (AL), where WL = AL + CWL. *See* JESD79-3F §3.4.4.2 at 31. The programmed CWL and resulting WL values supply latency-mode information, and the

controller/PHY must know the active CWL to launch write data and DQS at the correct time. The CWL/timing-mode decode and control logic in the MediaTek controller/PHY selects or applies the applicable DQS write-timing delay value based on that programmed latency-mode information. *See id.*

63. The selection block in MediaTek's DDR3 Products is configured to select the delay signal having a relatively short delay value in a high-speed operation mode, and is configured to select the delay signal having a relatively long delay value in a low-speed operation mode. DDR3 defines CWL values ranging from 5 to 12 clock cycles through MR2 bits A5:A4:A3. *See* JESD79-3F §3.4.4 at 30-31 (Fig. 11). Higher CWL values (e.g., CWL 9-12) correspond to higher-speed clock frequencies (shorter clock periods), while lower CWL values (e.g., CWL 5-8) correspond to lower-speed clock frequencies (longer clock periods). *See id.* The high-CWL modes (CWL 9-12) constitute a high-speed operation mode requiring a relatively short write-timing delay value, and the low-CWL modes (CWL 5-8) constitute a low-speed operation mode requiring a relatively long write-timing delay value. The MediaTek controller/PHY selects or applies different DQS write-time delay values appropriate to the respective CWL timing mode. *See id.*

64. In MediaTek's DDR3 Products, the high-speed operation mode signal is a signal which is enabled in a high level when a CAS latency signal is more than a predetermined value. The DDR3 standard defines CAS Write Latency through MR2 bits A3-A5, where "[t]he CAS Write Latency is defined by MR2 (bits A3-A5)." JESD79-3F §3.4.4.2 at 31. In the MR2 encoding, bit A5 is set to logic high (A5=1) for CWL values 9, 10, 11, and 12. *See* JESD79-3F §3.4.4 at 30-31 (Fig. 11) (A5:A4:A3 = 100 for CWL 9; 101 for CWL 10; 110 for CWL 11; 111 for CWL 12). With a predetermined value of between 8 and 9 clock cycles, MR2 A5 being high identifies that CWL is greater than the predetermined value. The high-speed operation mode signal in the

MediaTek controller/PHY is thus an active-high signal (or a decoded signal derived from MR2 A5=1) that is enabled when the programmed CWL exceeds the predetermined value.

65. In MediaTek's DDR3 Products, the low-speed operation mode signal is a signal which is enabled in a high level when the CAS latency signal is less than the predetermined value. In the DDR3 MR2 encoding, bit A5 is set to logic low (A5=0) for CWL values 5, 6, 7, and 8. *See* JESD79-3F §3.4.4 at 30-31 (Fig. 11) (A5:A4:A3 = 000 for CWL 5; 001 for CWL 6; 010 for CWL 7; 011 for CWL 8). With a predetermined value of between 8 and 9 clock cycles, all of those CWL values are less than the predetermined value. The low-speed operation mode signal in the MediaTek controller/PHY is an active-high decoded signal corresponding to MR2 A5=0 (i.e., the complementary low-CWL state), which is enabled in a high level when the programmed CWL is less than the predetermined value.

66. As discussed above, Mimir reserves its rights to provide greater detail regarding its infringement claims, including their full scope, during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

67. As illustrated above, on information and belief, MediaTek's DDR3 Products satisfy each and every limitation of at least claim 1 of the '954 Patent. MediaTek's LPDDR3, DDR4, and LPDDR4 Products (including but not limited to the Helio X Series, Helio P Series, Helio A Series, Helio G Series, Dimensity 6000 Series, Dimensity 700 Series, Dimensity 800 Series, Dimensity 900 Series, Dimensity 1000 Series, Dimensity 7000 Series, Dimensity 8000 Series, Dimensity 9000 Series, MT81xx Tablet Series, and Kompanio Series) infringe the '954 Patent in the same way because they incorporate the same infringing functionality as the DDR3 Products. Consequently, MediaTek directly infringes the '954 Patent through at least the manufacture, use,

offers to sell, sale, and/or importation of its DDR3, LPDDR3, DDR4, and LPDDR4 Products and/or products incorporating the same.

68. MediaTek has specifically marketed its DDR3, LPDDR3, DDR4, and LPDDR4 Products as supporting memory that complies with the DDR3, LPDDR3, DDR4, and LPDDR4 standards and intends for its customers to use the devices in a standard-compliant manner. For example, MediaTek specifically advertises its MT8163V/A SoC as supporting DDR3 memory.[1]

69. MediaTek has induced infringement of the ’954 Patent by knowingly and intentionally inducing others to directly infringe the ’954 Patent. Despite having notice of the ’954 Patent at least by the date on which this Complaint was filed, MediaTek has actively encouraged others to infringe the patent. For example, MediaTek has knowingly and intentionally induced third-party manufacturers, shippers, distributors, and/or retailers to directly infringe (literally or under the doctrine of equivalents) the ’954 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, MediaTek’s DDR3, LPDDR3, DDR4, and LPDDR4 Products or products containing the same. MediaTek’s DDR3, LPDDR3, DDR4, and LPDDR4 Products are especially designed to contain features that infringe the ’954 Patent.

70. MediaTek takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the DDR3, LPDDR3, DDR4, and LPDDR4 Products or products containing the DDR3, LPDDR3, DDR4, and LPDDR4 Products that infringe at least claim 1 of the ’954 Patent. Such steps by MediaTek include, among other things, making or selling the DDR3, LPDDR3, DDR4, and LPDDR4 Products for importation into or sale in the United States, knowing such importation or sale would occur. MediaTek has engaged in these activities with knowledge of the ’954 Patent and

[1] *See* https://www.mediatek.com/products/tablets/mt8163.

knowledge that the induced acts constitute infringement. MediaTek's inducement of infringement of the '954 Patent is ongoing.

71. By at least the date on which this Complaint was filed, Mimir disclosed the existence of the '954 Patent to MediaTek and identified MediaTek's infringing activities. Thus, MediaTek has had knowledge of the '954 Patent and that its activities infringe the '954 Patent since at least the date on which this Complaint was filed.

72. Accordingly, on information and belief, MediaTek's acts of infringement of the '954 Patent have been committed and are being committed with full knowledge of Mimir's patent rights and full knowledge of infringement. MediaTek's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Mimir to enhanced damages.

73. Mimir has suffered and continues to suffer damages as a result of MediaTek's infringement of the '954 Patent.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,978,547**

74. Mimir repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

75. MediaTek has, without Mimir's authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain chips and electronic devices containing the same, such as smartphones, tablets, computers, televisions, and other end-user devices, that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the '547 Patent.

76. For example, MediaTek makes, has made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, but not limited to, its MT65xx Series, Helio X Series, Helio P Series, Helio A Series, Helio G Series, MT67xx Mid-

Range Series, MT81xx Tablet Series, Kompanio Series, and other products that comply with or otherwise support memory compliant with the JEDEC DDR3 standards ("MediaTek's DDR3 Products").

77. MediaTek's infringing activities violate 35 U.S.C. § 271.

78. The claims of the '547 Patent are valid and enforceable.

79. Claim 1 of the '547 Patent recites:

> A circuit for generating a data I/O control signal used in a semiconductor memory apparatus, comprising:
>
> > a first delay block configured to receive an input pulse, to delay the input pulse by a first delay value, and to output a first delay signal;
> >
> > a second delay block configured to receive the input pulse, to delay the input pulse by a second delay value being larger than the first delay value, and to output a second delay signal; and
> >
> > a selection block configured to receive the first delay signal and the second delay signal and to select one of the first delay signal and the second delay signal according to a value of a CAS latency signal.

80. MediaTek's above-discussed activities have infringed and continue to infringe one or more claims of the '547 Patent, including, for example and without limitation, claim 1, because the DDR3 Products satisfy each and every limitation of this claim.

81. For example, MediaTek's DDR3 Products include a DDR3-compatible memory controller and physical layer ("PHY") timing circuitry that constitutes a circuit for generating a data I/O control signal used in a semiconductor memory apparatus. The DDR3 standard defines DQS and DQS# as "Data Strobe" signals that are "output with read data, input with write data." *See* JESD79-3F §2.10 at 13-14. The MediaTek controller/PHY generates DQS write-timing control signals used in the DDR3 memory system.

82. MediaTek's DDR3 Products comprise a first delay block configured to receive an input pulse, to delay the input pulse by a first delay value, and to output a first delay signal. The

DDR3 standard's write leveling provisions require controller-side adjustable DQS delay circuitry for write-timing control. Specifically, "[t]he memory controller involved in the leveling must have adjustable delay setting on DQS – DQS# to align the rising edge of DQS - DQS# with that of the clock at the DRAM pin." JESD79-3F §4.8 at 42. The first delay block is a first functional delay path, tap, or range within the MediaTek DDR PHY DQS delay circuitry that receives a write-timing input pulse (e.g., an internal DQS launch/control pulse) and produces a first delayed DQS/write-timing signal at a first (shorter) DQS write-timing delay value corresponding to a high-CWL timing mode. *See id.*

83. MediaTek's DDR3 Products comprise a second delay block configured to receive the input pulse, to delay the input pulse by a second delay value being larger than the first delay value, and to output a second delay signal. The DDR3 standard provides that during write leveling, "[t]he controller repeatedly delays DQS - DQS# until a transition from 0 to 1 is detected," and the controller "decides to increment or decrement DQS – DQS# delay setting and launches the next DQS/DQS# pulse." JESD79-3F §4.8 at 42; §4.8.2 at 43. The second delay block is a second functional delay path, tap, or range (or the same programmable delay circuitry configured at a different setting) within the MediaTek DDR PHY that receives the same type of write-timing input pulse and outputs a second delayed DQS/write-timing signal at a second (larger) DQS write-timing delay value corresponding to a low-CWL timing mode. The standard supports multiple available DQS write-timing delay values through the controller's adjustable delay mechanism.

84. MediaTek's DDR3 Products comprise a selection block configured to receive the first delay signal and the second delay signal and to select one of the first delay signal and the second delay signal according to a value of a CAS latency signal. The DDR3 standard defines CAS Write Latency (CWL) through Mode Register MR2, where "[t]he CAS Write Latency is

defined by MR2 (bits A3-A5)" and the overall "Write Latency (WL) is defined as Additive Latency (AL) + CAS Write Latency (CWL); WL = AL + CWL." JESD79-3F §3.4.4.2 at 31. MR2 bits A5:A4:A3 encode CWL values 5 through 12. *See* JESD79-3F §3.4.4 at 30-31 (Fig. 11). The programmed CWL and resulting WL values supply latency-mode information. The CWL/timing-mode decode and control logic in the MediaTek controller/PHY uses that programmed latency-mode information to receive or use the first and second delayed DQS write-timing signals in different operating configurations and to select or apply the applicable DQS write-timing delay value for the active CWL mode. *See id.*

85. As discussed above, Mimir reserves its rights to provide greater detail regarding its infringement claims, including their full scope, during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

86. As illustrated above, on information and belief, MediaTek's DDR3 Products satisfy each and every limitation of at least claim 1 of the '547 Patent. MediaTek's LPDDR3, DDR4, and LPDDR4 Products (including but not limited to the Helio X Series, Helio P Series, Helio A Series, Helio G Series, Dimensity 6000 Series, Dimensity 700 Series, Dimensity 800 Series, Dimensity 900 Series, Dimensity 1000 Series, Dimensity 7000 Series, Dimensity 8000 Series, Dimensity 9000 Series, MT81xx Tablet Series, and Kompanio Series) infringe the '547 Patent in the same way because they incorporate the same infringing functionality as the DDR3 Products. Consequently, MediaTek directly infringes the '547 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of its DDR3, LPDDR3, DDR4, and LPDDR4 Products and/or products incorporating the same.

87. MediaTek has, for example, specifically marketed its DDR3, LPDDR3, DDR4, and LPDDR4 Products as supporting memory that complies with the DDR3, LPDDR3, DDR4, and

LPDDR4 standards and intends for its customers to use the devices in a standard-compliant manner. For example, MediaTek specifically advertises its MT8163V/A SoC as supporting DDR3 memory.[2]

88. MediaTek has induced infringement of the ’547 Patent by knowingly and intentionally inducing others to directly infringe the ’547 Patent. Despite having notice of the ’547 Patent at least by the date on which this Complaint was filed, MediaTek has actively encouraged others to infringe the patent. For example, MediaTek has knowingly and intentionally induced third-party manufacturers, shippers, distributors, and/or retailers to directly infringe (literally or under the doctrine of equivalents) the ’547 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, MediaTek’s DDR3, LPDDR3, DDR4, and LPDDR4 Products or products containing the same. MediaTek’s DDR3, LPDDR3, DDR4, and LPDDR4 Products are especially designed to contain features that infringe the ’547 Patent.

89. MediaTek takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the DDR3, LPDDR3, DDR4, and LPDDR4 Products or products containing the DDR3, LPDDR3, DDR4, and LPDDR4 Products that infringe at least claim 1 of the ’547 Patent. Such steps by MediaTek include, among other things, making or selling the DDR3, LPDDR3, DDR4, and LPDDR4 Products for importation into or sale in the United States, knowing such importation or sale would occur. MediaTek has engaged in these activities with knowledge of the ’547 Patent and knowledge that the induced acts constitute infringement. MediaTek’s inducement of infringement of the ’547 Patent is ongoing.

---

[2] *See* https://www.mediatek.com/products/tablets/mt8163

90. By at least the date on which this Complaint was filed, Mimir disclosed the existence of the ’547 Patent to MediaTek and identified MediaTek’s infringing activities. Thus, MediaTek has had knowledge of the ’547 Patent and that its activities infringe the ’547 Patent since at least the date on which this Complaint was filed.

91. Accordingly, on information and belief, MediaTek’s acts of infringement of the ’547 Patent have been committed and are being committed with full knowledge of Mimir’s patent rights and full knowledge of infringement. MediaTek’s wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Mimir to enhanced damages.

92. Mimir has suffered and continues to suffer damages as a result of MediaTek’s infringement of the ’547 Patent.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 8,274,102**

93. Mimir repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94. MediaTek has, without Mimir’s authority, made, used, offered to sell, sold, imported into the United States, and/or instructed others regarding the making, use, sale, or importation of certain chips and electronic devices containing the same, such as smartphones, tablets, computers, televisions, and other end-user devices, that directly infringe (literally or under the doctrine of equivalents) and/or induce the infringement of one or more claims of the ’102 Patent.

95. MediaTek offers several infringing 3nm, 4nm, 5nm, 6nm, and 7nm devices, including but not limited to the Accused SoCs.

96. MediaTek’s infringing activities violate 35 U.S.C. § 271.

97. The claims of the ’102 Patent are valid and enforceable.

98. Claim 9 of the ’102 Patent recites:

A semiconductor device comprising:

an active region formed in a semiconductor substrate;

a silicon germanium layer formed in a PMOS region of the active region;

a PMOS gate formed over the silicon germanium layer formed in a PMOS region of the active region; and

an NMOS gate formed over the active region.

99. MediaTek's above-discussed activities have infringed and continue to infringe one or more claims of the '102 Patent, including, for example and without limitation, claim 9, because the Accused SoCs satisfy each and every limitation of this claim.

100. For example, the image below is of a MediaTek Dimensity 7400 (4nm device) removed from a Motorola Edge 2025 cell phone that was imported into and sold in the United States.




101. The Dimensity 7400 is a semiconductor device, and it comprises an active region (outlined in red) formed in a semiconductor substrate, as illustrated below.




102. The Dimensity 7400 comprises a silicon germanium layer (shown in magenta on the right and in green on the left below) formed in a PMOS region of the active region, as illustrated below.




103. The Dimensity 7400 comprises a PMOS gate (outlined in blue) formed over the silicon germanium layer formed in a PMOS region of the active region, as illustrated below.




104. The Dimensity 7400 comprises an NMOS gate (outlined in pink) formed over the active region, as illustrated below.




105. As discussed above, Mimir reserves its rights to provide greater detail regarding its infringement claims, including their full scope, during subsequent proceedings, for example, via infringement contentions provided pursuant to the Court's scheduling order and local rules.

106. As illustrated above, the Accused SoCs satisfy each and every limitation of at least claim 9 of the ’102 Patent. Consequently, MediaTek directly infringes the ’102 Patent through at least the manufacture, use, offers to sell, sale, and/or importation of the Accused SoCs and/or products incorporating the same.

107. MediaTek has induced infringement of the ’102 Patent by knowingly and intentionally inducing others to directly infringe the ’102 Patent. Despite having notice of the ’102 Patent at least by the date on which this Complaint was filed, MediaTek has actively encouraged others to infringe the patent. For example, MediaTek has knowingly and intentionally induced third-party manufacturers, shippers, distributors, and/or retailers to directly infringe (literally or under the doctrine of equivalents) the ’102 Patent by using, selling, and/or offering to sell in the United States, and/or importing into the United States, the Accused SoCs or products containing the same. The Accused SoCs are especially designed to contain features that infringe the ’102 Patent.

108. MediaTek takes active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, use, sell, and/or offer to sell the Accused SoCs or products containing the Accused SoCs that infringe at least claim 1 of the ’102 Patent. Such steps by MediaTek include, among other things, making or selling the Accused SoCs for importation into or sale in the United States, knowing such importation or sale would occur. MediaTek has engaged in these activities with knowledge of the ’102 Patent and knowledge that the induced acts constitute infringement. MediaTek’s inducement of infringement of the ’102 Patent is ongoing.

109. By at least the date on which this Complaint was filed, Mimir disclosed the existence of the ’102 Patent to MediaTek and identified MediaTek’s infringing activities. Thus,

MediaTek has had knowledge of the '102 Patent and that its activities infringe the '102 Patent since at least the date on which this Complaint was filed.

110. Accordingly, on information and belief, MediaTek's acts of infringement of the '102 Patent have been committed and are being committed with full knowledge of Mimir's patent rights and full knowledge of infringement. MediaTek's wrongful conduct thus constitutes willful, intentional, and deliberate infringement, entitling Mimir to enhanced damages.

111. Mimir has suffered and continues to suffer damages as a result of MediaTek's infringement of the '102 Patent.

## PRAYER FOR RELIEF

**WHEREFORE**, Mimir respectfully requests the following relief:

A. The entry of judgment in favor of Mimir and against MediaTek that MediaTek has infringed and continues to infringe one or more claims of the Asserted Patents;

B. The entry of judgment in favor of Mimir and against MediaTek that MediaTek's infringement of each of the Asserted Patents has been willful;

C. The entry of a judgment awarding Mimir all damages resulting from MediaTek's infringement, including no less than a reasonable royalty, and that such amount be trebled pursuant to 35 U.S.C. § 284 based on MediaTek's willful infringement, including pre-judgment and post-judgment interest and without limitation under 35 U.S.C. § 287;

D. The entry of judgment in favor of Mimir and against MediaTek that interest, costs, and expenses be awarded in favor of Mimir;

E. An accounting and/or supplemental damages for all damages occurring after any discovery cutoff;

F. The entry of judgment in favor of Mimir and against MediaTek that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Mimir is, therefore, entitled to reasonable attorneys' fees; and

G. Such further relief as the Court deems just and proper.

**JURY DEMAND**

Mimir respectfully demands a trial by jury on all issues so triable.

Dated: September 1, 2026

Respectfully submitted,

*/s/ Kevin C. Wheeler by permission Andrea L. Fair*

Kevin C. Wheeler
Jacob C. Vannette
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
kevin.wheeler@lw.com
jake.vannette@lw.com

Charles H. Sanders
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
charles.sanders@lw.com

Of Counsel:
Andrea L. Fair (Texas Bar No. 24078488)
Garrett C. Parish (Texas Bar No. 24125824)
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
andrea@millerfairhenry.com
garrett@millerfairhenry.com

*Counsel for Plaintiff MimirIP LLC*